**LEONARDO DA VINCI'S HORSE, INC., Plaintiff,**

v.

**Thomas A. O'BRIEN, individually and Anne Reichenbach, individually and both trading as T & A Arts Ltd., and Bruton Gallery, Inc., Defendants.**

Civ. A. No. 87–7420.

United States District Court, E.D. Pennsylvania.

April 5, 1991.

Jeffrey B. Matzkin, Matzkin & Director, Allentown, Pa., for plaintiff.

Michael A. Shapiro, Garden City, N.Y., for defendants.

## MEMORANDUM

TROUTMAN, Senior District Judge.

Currently before the Court is the motion of defendant Bruton Gallery, Inc., pursuant to Fed.R.Civ.P. 12(b)(2) to Dismiss Amended Complaint for Lack of Personal Jurisdiction or in the Alternative Motion to Transfer Venue, 28 U.S.C. § 1404(a). For the reasons that follow, the Motion to Dismiss will be denied, and the Motion to Transfer Venue will also be denied.

### I. *Background.*

The above captioned case was brought by Leonardo Da Vinci's Horse, Inc., a non-profit corporation based in Fogelsville, Pennsylvania. "The purpose of the corporation is to fund and build a heroic bronze equestrian statue, originally commissioned in 1482 to be built by Leonardo Da Vinci in Milan, Italy." Plaintiff's Pre–Trial Memorandum (Doc. # 9), at 1. The statue is to be given to the people and City of Milan as a gift. *Id.* at 2. As part of its effort to raise money for the venture, plaintiff allegedly entered into an agreement with defendants O'Brien, Reichenbach, and T & A Arts Ltd., ("original defendants") for the consignment sale of "Le Penseur" ("The Thinker"), a fifteen inch tall bronze statue by Auguste Rodin. The authority granted under the consignment agreement provided that the statue was to be sold for at least $70,000. Amended Complaint at ¶ 6. The original defendants sold the statue to defendant Bruton Gallery, a New York based seller of art, for a "bargain basement" price which was less than provided in the consignment agreement. Amended Complaint, at ¶¶ 18–19. The statue was later re-sold by the Bruton Gallery to a foreign buyer at a substantial profit. *Id.;* Cantor Supplemental Affidavit (Attached to Doc. # 29) at ¶ 6.

It is alleged in the amended complaint at ¶ 19, that, *inter alia,* the Bruton Gallery acted unreasonably in that it paid a "bargain basement" price such that it knew or should have known the statue was stolen or that proper authority under the consignment agreement was lacking; did not ascertain the true identities of the other defendants and the scope of their authority to sell the statue; and despite learning the identity of the owner, failed to contact the owner regarding the sale. The amended complaint, at ¶ 26, also alleges that the Bruton Gallery willfully and maliciously converted the statue and the proceeds for its own benefit. The plaintiff seeks to recover the amount of the statue's selling price, less any amounts defendants have already paid, or the return of the statue.

The Bruton Gallery filed the above mentioned motion to dismiss on September 28, 1989. On January 12, 1990, by Order of the Court, plaintiff was "granted leave to conduct discovery for the limited purpose of determining whether this Court has personal jurisdiction over Defendant Bruton Gallery, Inc." Order filed January 22, 1990 (Doc. # 24). The same Order also granted plaintiff thirty days in which to respond to the instant motion to dismiss, with 10 days thereafter for defendant to respond. Subsequently, plaintiff was given an enlargement of time in which to file its response, Order of the Court entered April 23, 1990, and the response was filed.

### II. *Motion to Dismiss.*

#### A. Legal Standards Controlling Personal Jurisdiction.

For this Court to exercise jurisdiction of the defendant, it must have "personal jurisdiction" over the defendant. A United States District Court may exercise jurisdiction pursuant to the law of the State in which the District Court sits. Fed.R.Civ.P. 4(e). The Pennsylvania Long Arm Statute, 42 Pa.Con.Stat.Ann. § 5322(a)(4), allows for jurisdiction over a defendant "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." Section 5322(b) further provides for jurisdiction to the fullest extent allowed by, and consistent with, the Constitution of the United States. *See also, Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61 (3d Cir.1984);

*National Mortgage Network v. Home Equity Centers*, 683 F.Supp. 116 (E.D.Pa. 1988).

Personal jurisdiction is constitutional so long as the defendant had minimum contacts with the forum state and exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). The Supreme Court recently reaffirmed that the constitutional test for personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 108–109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987).

■ Minimum contacts analysis looks only to the acts of the defendant. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779, 104 S.Ct. 1473, 1480, 79 L.Ed.2d 790 (1984). The proper focus for minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). Once minimum contacts are shown, "often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Industry Co.*, 480 U.S. at 114, 107 S.Ct. at 1033.

■ When a defendant has minimum contacts with a state, the state has an interest in providing a forum to residents injured by the actions of non-residents. *See*, Pennsylvania Long Arm Statute, *supra*. A state may, therefore, "exercise personal jurisdiction over a nonresident who 'purposefully directs' his activities toward forum residents." *Burger King Corp.*, 471 U.S. at 473, 105 S.Ct. at 2182. When a non-resident "purposefully directs" activities at a state, "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Wood-*son*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183.

■ Although foreseeability of causing injury in another State by itself is an insufficient basis to exercise personal jurisdiction, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.; Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 212 (3d Cir.1984). *Burger King* states that

> where individuals "purposefully derive benefit" from their interstate activities, [citation omitted] it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

*Burger King Corp.*, 471 U.S. at 473–474, 105 S.Ct. at 2182–2183. *Burger King,* further points out that modern transportation and communication make it easy for a nonresident defendant to defend a suit, so it usually would not offend traditional notions of fair play and substantial justice to require a non-resident defendant to litigate a dispute arising out of his actions in a foreign state forum. *Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183 (*citing, McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

B. Specific v. General Jurisdiction.

■ A court may exercise personal jurisdiction over a non-resident defendant in two situations. The first is when a court has "general jurisdiction". General jurisdiction exists when the "claim does not arise out of or is unrelated to the defendant's contacts with the forum", *i.e.,* the claim is based on non-forum related activities. *Dollar Savings Bank*, 746 F.2d at 211. The second is when the court has "specific jurisdiction". Specific jurisdiction is "invoked when the claim is related to or

arises out of the defendant's contacts with the forum", *i.e.*, the claim is based on forum related activities. *Id.* Since the level of scrutiny to determine personal jurisdiction is greater for general jurisdiction, the "initial determination that must be made is whether the claim ... arises from the defendant's forum related activities [specific jurisdiction] or from non-forum related activities [general jurisdiction]." *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982). The appropriate focus, therefore, is on the transaction giving rise to the claim and how it relates to the forum. *Id.*

### 1. *Specific Jurisdiction.*

 A court asserting specific jurisdiction over a non-resident defendant looks to a specific act to determine "whether there are enough contacts with the forum arising out of *that* transaction in order to justify the assertion of jurisdiction over the out-of-state defendant." *Reliance Steel Products Co.,* 675 F.2d at 588. It is essential that specific jurisdiction be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws", which gives rise to defendant's minimum contacts with the forum state. *Hanson v. Denckla,* 357 U.S. 235 at 253, 78 S.Ct. 1228 at 1239, 2 L.Ed.2d 1283 (1958); *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Asahi Metal Industry Co.,* 480 U.S. at 109, 107 S.Ct. at 1030 (*Asahi* concluded that the placement of a product into the stream of commerce, without more, was not such an act purposefully directed toward· the forum State).

### 2. *General Jurisdiction.*

 The Third Circuit has held that minimum contacts analysis is inappropriate for an assertion of general jurisdiction. Rather, a plaintiff "must demonstrate that the defendant maintained continuous and substantial forum affiliations." *Dollar Savings Bank,* 746 F.2d at 212. That plaintiff must show "significantly more than mere minimum contacts" in cases of general jurisdiction was subsequently reaffirmed by the Third Circuit in *Provident National Bank v. California Federal Savings & Loan Association,* 819 F.2d 434, 437 (3d Cir.1987), which held that a non-resident defendant must have "continuous and substantial contacts" to maintain jurisdiction for a non-forum related claim. "Obviously this is a much higher threshold to meet for the facts required to assert this 'general' jurisdiction must be 'extensive and persuasive.'" *Reliance Steel Products Co.,* 675 F.2d at 588–589 (*citing, Compagnie des Bauxites de Guinea v. Insurance Co. of North America,* 651 F.2d 877 (3d Cir. 1981)).

### C. Plaintiff's Burden.

 "Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident National Bank,* 819 F.2d at 437 (*citing, Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 542 (3d Cir.1985)). The plaintiff must show that the cause of action arises from either, (1) defendant's minimum contact, *i.e.*, specific jurisdiction, or (2) defendant's minimum contacts plus acts that amount to continuous and systematic contacts, *i.e.*, general jurisdiction. *Provident National Bank,* 819 F.2d at 437 (*citing, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *St. George's School of Medicine, supra* ). An important factor in this analysis is whether the plaintiff has shown contacts that are central to the defendant's business. If so, then defendant has a much higher expectation of being brought to court in the forum state. *See generally, Provident National Bank,* 819 F.2d at 438.

### D. Analysis.

If there is personal jurisdiction over the Bruton Gallery with respect to the current claim, it must be based on specific jurisdiction. Specific jurisdiction exists when the claim is related to or arises out of the defendant's contacts with the forum, *i.e.*,

the claim is based on forum related activities. The activities of the Bruton Gallery, the buying and selling of the statue all occurred outside of Pennsylvania. Plaintiff has alleged, however, that those activities surrounding this particular transaction were directed towards, and caused harm to the plaintiff, in Pennsylvania.

■ Plaintiff argues that the esoteric nature of the Bruton Gallery's business, that it deals in rare, unique, and individualized items on an international basis, makes it amenable to service. It is argued that the Bruton Gallery does not fit neatly within the scheme of *International Shoe* and its progeny. *International Shoe* is to protect the innocent and unwitting defendants from distant lawsuits, and Bruton does not fit with this description. Rather, plaintiff argues that the Bruton Gallery is an international art dealer with an international and select clientele; it has offices in London, U.K., and in New York; it concludes sales on an irregular and infrequent business; its New York office is an apartment, without a normal storefront inviting the public to browse; that only select and affluent persons are invited to buy items.

This Court will not create such an exception to precedent. The cases are clear that a nonresident defendant must have at least minimum contacts with the forum. The cases do not invite an inquiry into the nature and quality of defendant's business. Rather, the cases require an inquiry into the nature and quality of defendant's business contacts with the forum.

■ Certain intentional conduct in one forum which has an "effect" in a second forum, however, can be a sufficient basis for finding minimum contacts in the second forum. *See, Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *National Mortgage Network, supra.* Further, as noted above, the Pennsylvania Long Arm Statute provides for jurisdiction over one who causes harm in Pennsylvania by an act or omission committed outside the state. If a defendant commits an intentional act directed at a resident of Pennsylvania, it cannot offend traditional notions of fair play and substantial justice to con-

clude that the defendant could reasonably anticipate being haled into court in Pennsylvania.

■ The quality and nature of the actions of the Bruton Gallery, as alleged by plaintiff, were intentional and malicious actions that the Bruton Gallery knew or should have known would cause harm to plaintiff. The Bruton Gallery was told the name and location of the owner of the statue, Plaintiff's Response to Motion to Dismiss (Doc. #20) ¶17, yet it failed to contact the owner regarding the authority to sell the statue. Plaintiff's Supplemental Response, at 4–5, argues that the Bruton Gallery's actions

> resulted in the Plaintiff being deprived of its rights to title and possession of the unique and valuable bronze statue....

\* \* \* \* \* \*

> It is respectfully argued that there is ample testimony in this matter to demonstrate Bruton became a participant in the fraudulent scheme of the original Defendants to willfully defraud the Plaintiff of its rights to the bronze statue. The testimony and evidence in this case demonstrates [that] Bruton's involvement ... [was] designed to deprive the Plaintiff of the bronze statue and also of the rightful proceeds of what should have been a legitimate transaction at proper market prices.

\* \* \* \* \* \*

> Bruton is, in essence, requesting that this Court insulate a wrongdoer from responsibility for its actions...., [and] were this Court to accede to this request, Bruton's willful and fraudulent conduct would receive, ... judicial protection.

The Court agrees that it would "be unfair to allow [defendant] to escape having to account in other States for consequences that arise proximately from such activities" and that the Due Process Clause should not be a territorial shield to prevent answering for actions voluntarily assumed. *Burger King Corp.,* 471 U.S. at 473–474, 105 S.Ct. at 2182–2183.

The actions the Bruton Gallery are alleged to have taken are apparently common

in the art market. Buyers do not always inquire about the seller's authority to sell, or right to sell, the object. A "bargain basement" price is often a sign that the seller's rights to dispose the object are not on the level. *See generally,* Comment, *Autocephalous Greek Orthodox Church v. Goldberg and Feldman Fine Arts, Inc.: A Case for the Use of Civil Remedies in Effecting the Return of Stolen Art,* 8.3 Dick.J.Intl.L. 441 (1990) [hereinafter Return of Stolen Art].

■ The demand for art is not "limited to legitimate purchases but extends into a profitable market of stolen art works." *Return of Stolen Art, supra,* at 441.[1] The buyer has a duty to use due diligence when purchasing art, especially if there are circumstances surrounding the deal that would raise suspicion, such as a "bargain basement" price. *Id.* at 456. *See also, Autocephalous Greek Orthodox Church v. Goldberg and Feldman Fine Arts, Inc.,* 717 F.Supp. 1374, 1401 (S.D.Ind.1989) (defendant bought mosaics for $1.08 million and offered to sell for $20 million; mosaics appraised by various experts at $3 million to $6 million), *aff'd,* 917 F.2d 278 (7th Cir. 1990), *reh'g en banc denied,* 1990 WL 160427, 1990 US App. Lexis 20398 (7th Cir.1990). Discussing the district court's findings in *Autocephalous Church,* the above cited article states:

The defendant's due diligence was not favorably discussed by the court in [*Autocephalous Church*]. The court noted the extreme indifference with which she conducted her inquiry into the true ownership of the [art].... The court also noted that the hasty way in which the deal was completed and the [art] turned over to Goldberg raised suspicions. The

hurried nature of the sale raised the possibility that Goldberg knew that the [art was] stolen yet wanted [it] no matter what the cost.

*Return of Stolen Art, supra,* at 457. The article further states that "close scrutiny in the purchase of foreign art has not been the trade practice." *Id.* at 448.[2]

Attached to Plaintiff's Response to Motion to Dismiss are excerpts from the deposition of the Bruton Gallery's North American Representative (and sole U.S. employee), Jay Cantor, in which Mr. Cantor states that defendant O'Brien represented to the Bruton Gallery that

he had been given the piece on consignment by its owner to sell, that the owner was a Philadelphia collector who owned many pieces of sculpture and was looking to dispose of them to raise money.

Q. Did he show you any documentation concerning his representation of this Philadelphia collector?

A. Not at his first meeting, he did not.

Q. How about at the second meeting?

A. Yes, he did.

Q. Do you have that with you?

A. No, I do not. There was nothing written given us. His—at his first meeting he did not identify the collector. At his second meeting with Michael LeMerchant [the Bruton Gallery's United Kingdom based owner] I recall that he did identify him as Mr. Charles Dent.

Q. At the second meeting did he show you any documentation in support of his representation of Mr. Dent?

A. As I recall, he did not.

Although Mr. Cantor continues to say that further inquiry was made, that inquiry did

---

1. Stolen art is defined as that which is "acquired, or possessed, as a result of some wrongful or dishonest act or taking whereby a person willfully obtains or retains possession of property which belongs to another, without *or beyond any permission given,* and with the intent to deprive the owner of the benefit of ownership." Return of Stolen Art, at 441 (*quoting, United States v. Hollinshead,* 495 F.2d 1154, 1156 (9th Cir.1974) (emphasis added).

2. This quote cites two individuals who state "This decision (Goldberg) really tells museums

and private individuals that the danger of buying stolen art is very serious, and their investigations should be very thorough" and "The significance of the decision is quite profound. We are going to use this decision as the basis of formulating a policy on the purchase of antiquities. We will ask such questions as is the price appropriate? ... the more suspicious the circumstances the [more] circumspect the buyer must be." *Return of Stolen Art, supra,* at 448–449, n. 74.

not reveal anything more than the verbal representations that defendant O'Brien claimed to have the statue on consignment to sell for Mr. Dent.

The Seventh Circuit, affirming *Autocephalous Church* on appeal, concluded its opinion by observing:

> Lest this result seem too harsh, we should note that those who wish to purchase art work on the international market, undoubtly a ticklish business, are not without means by which to protect themselves. Especially when circumstances are as suspicious as those that faced Peg Goldberg, prospective purchasers would do best to do more than make a few last-minute phone calls. * * * In such cases, dealers can (and probably should) take steps such as ... a full background check of the seller and his claim to title; insurance protection and a contingency sales contract; and the like.

*Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg and Feldman Fine Arts, Inc.*, 917 F.2d 278, 294 (7th Cir.1990). Given plaintiff's assertion of willful and malicious acts by defendant to deprive it of the statue, the apparent state of the resale market for art objects, and the Bruton Gallery's inattention and apparent lack of concern for securing concrete proof of the authority of defendant O'Brien, the Court concludes that plaintiff has alleged, and carried its burden of showing, that the Bruton Gallery, through a specific transaction caused harm within Pennsylvania. This is sufficient to assert personal jurisdiction over the Bruton Gallery consistent with the Pennsylvania Long Arm Statute and the constitutional analysis of the Supreme Court. *See, Calder v. Jones, supra.; National Mortgage Network, supra.* The Court finds that the quality and nature of the activities of the Bruton Gallery amounted to purposefully directed minimum contacts to Pennsylvania. For these reasons, the Bruton Gallery's motion to dismiss will be denied.

### III. *Motion to Transfer Venue.*

A. Legal Standards Controlling Transfer.

As an alternative to the motion to dismiss, defendant Bruton Gallery has filed a motion to transfer venue, which now needs to be addressed. A District Court may transfer an action to another district where venue and jurisdiction are proper, *i.e.*, where the case could have been brought. *National Mortgage Network, supra.* Transfer may be granted "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). While the District Court has broad discretion to decide whether to transfer an action, it is the burden of the moving party to justify the transfer. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d Cir. 1973); *National Mortgage Network, supra.* Many of the same factors relevant to determine a motion of *forum non conveniens* apply to a motion to transfer pursuant to 28 U.S.C. § 1404, but a District Court has much broader discretion when deciding a motion to transfer. *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *National Mortgage Network, supra.* These factors, involving both public and private interests, include:

1. relative ease of access to sources of proof;

2. availability of compulsory process for attendance of unwilling witnesses;

3. cost of obtaining attendance of willing witnesses;

4. possibility of viewing premises, if applicable;

5. all other practical problems that make trial of a case easy, expeditious, and inexpensive; and

6. "public interest" factors, including the relative congestion of court dockets, choice of law considerations, and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

*Gulf Oil v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *National Mortgage Network*, 683 F.Supp. at 119. An additional factor is plaintiff's choice of forum, which is entitled to great weight, and will rarely be disturbed, *Gulf Oil v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at

843, when one or more of the parties reside in, or the operative facts occurred in, the district selected by the plaintiff. *National Mortgage Network, supra.*

**B. Discussion.**

It is the Bruton Gallery that bears the burden of justifying transfer. In support thereof, it states that the only factor favoring plaintiff is that plaintiff resides within this district and therefore selected this district. As noted above, however, this factor is entitled to great weight, and will rarely be disturbed. The Bruton Gallery further states that all of defendant Reichenbach's witnesses listed in her pre-trial memorandum are from New York, as well as are its own witnesses. The Bruton Gallery cites the need to have witnesses from Christie's and Southeby's as well; all records regarding the statue and Christie's are in New York; because the Bruton Gallery's sole employee will need to attend trial, it will have to close business during that time; and New York law will be applicable.

Responding to this, plaintiff argues that not only does plaintiff reside within this district, but plaintiff's sole employee is also a resident of this district, as are all records regarding the statue and Christie's, as well as regarding its dealings with the original defendants. Since plaintiff has only one employee who will need to attend any trial, it too will have to shut down its business. Regarding the potential inconvenience of trying this case in Pennsylvania, plaintiff argues that the Bruton Gallery's allegations are "but a sham", and notes that while the Bruton Gallery's president is outside this Court's jurisdiction, he is also outside the jurisdiction of the possible transferee court, the Southern District of New York, and it would be an inconvenience for him to appear in any United States court. Plaintiff also notes that this Court is only two hours from the Southern District of New York.

█ Finally, plaintiff states that it does not know why the Bruton Gallery needs to have witnesses from Christie's and Southeby's testify as they took no part and played no role in the sale of the statue. While the Court cannot state that these witnesses

would serve no legitimate purpose, it is the Bruton Gallery's burden to show why they are needed. Examples of proof to support a movant's burden for a motion to transfer include, *inter alia,* "a list of names and addresses of witnesses whom the moving party plans to call and affidavits showing the materiality of the matter to which these witnesses will testify, ...." *Plum Tree, Inc.,* 488 F.2d at 757, n. 2.

█ Defendant Bruton Gallery has not met its burden of justifying transfer of this case. Not only were its arguments countered by plaintiff, but many of its arguments would equally apply to plaintiff if this case were transferred to the Southern District of New York. The Court also notes that plaintiff is a non-profit corporation created under the laws of Pennsylvania. Considering this factor along with the deference given to plaintiff's choice of forum, the Court will exercise its discretion in favor of denying the motion to transfer.

**IV. *Conclusion.***

An appropriate order follows, denying defendant Bruton Gallery's motion to dismiss or to transfer, and establishing appropriate discovery and motion deadlines.

### ORDER

AND NOW, this 5th day of April, 1991, upon consideration of Defendant Bruton Gallery, Inc.'s Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction or in the Alternative Motion to Transfer Venue (Doc. # 16) and the responses thereto, IT IS ORDERED that the motion is DENIED subject to reconsideration of the motion to transfer.

IT IS FURTHER ORDERED that upon consideration of all defendants having appeared and upon consideration of defendant Thomas A. O'Brien's response to complaint in which he requests leave until August 1, 1990, to retain counsel and said time having been elapsed by the passage of more than one year, the following Scheduling Order shall apply to all parties:

1. The Court will, upon request of counsel, immediately call a conference for the purpose of discussing settlement.

2. Pretrial factual discovery will extend sixty (60) days from the date of this Order. Discovery, therefore, shall end on Wednesday, June 5, 1991.

3. Pleadings may be amended and additional parties, if any, may be joined, without leave of Court, at any time prior to the close of discovery.

4. All substantive and dispositive motions, including motions to amend the pleadings or join additional parties after the period specified in ¶ 2, above, shall be filed not later than fourteen (14) days after the close of pretrial factual discovery.

5. All responses to said motions shall be filed not later than ten (10) days thereafter.

6. A pretrial settlement conference shall be held in Chambers on June 5, 1991, at 10:00 a.m.

7. The schedule set herein will not be extended unless good cause is shown. Any application for extension of time beyond the deadline set herein shall be made in writing to this Honorable Court and served upon all counsel prior to the expiration of the period sought to be extended. Such writing must disclose all such extensions previously obtained, the precise reasons giving rise to good cause under Rule 16(b), and whether adverse counsel agree with the application.