**UNITED STATES of America**

v.

**BROWN UNIVERSITY IN PROVIDENCE IN the STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS; The Trustees of Columbia University in the City of New York; Cornell University; The Trustees of Dartmouth College; President and Fellows of Harvard College, Massachusetts; Massachusetts Institute of Technology; The Trustees of Princeton University; The Trustees of the University of Pennsylvania; and Yale University.**

Civ. A. No. 91–3274.

United States District Court,
E.D. Pennsylvania.

Aug. 7, 1991.

Jon B. Jacobs, Dept. of Justice, Washington, D.C., Michael M. Baylson, U.S. Atty., John J. Hughes, Dept. of Justice, Philadelphia, Pa., for plaintiff.

Stanley D. Robinson, New York City, Joel Davidow, Bruce D. Sokler, Thomas B. Leary, Ronald G. Carr, Washington, D.C., Robert E. Sullivan, Boston, Mass., Andre L. Dennis, Philadelphia, Pa., Roger P. Fendrich, Washington, D.C., Arthur Makadon, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

BECHTLE, Chief Judge.

Presently before the court is defendant Massachusetts Institute of Technology's ("MIT") motion to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, MIT's motion will be *denied.*[1]

BACKGROUND

The government brought the above-captioned action alleging that MIT and eight

---

1. The court's decision is based upon the briefs submitted by the parties as well as arguments adduced at a hearing held on July 31, 1991.

other competing non-profit institutions of higher education have unlawfully cooperated with one another with respect to their financial aid programs. All defendants belong to what is referred to as the "overlap group." The government claims that the overlap group has made several agreements that serve to restrict the amount of financial aid awarded to undergraduate students. Specifically, the complaint alleges that through the overlap group, defendants have agreed to:

(1) Award all financial aid solely on the basis of family income and assets, instead of on the basis of academic achievement, talent, or diversity;

(2) use an agreed-upon formula for measuring the expected family contribution for financial aid applicants;

(3) compare the family contribution for financial aid applicants admitted to more than one overlap group school and eliminate significant differences so that actual family contributions will be comparable; and

(4) exchange and often match self-help levels, which are non-grant assistance including loans and campus employment, of financial aid applicants.

The complaint alleges that the purpose and effect of the overlap group is "to ensure that families of students receiving financial aid will pay approximately the same amount regardless of the overlap institution the student chooses to attend." Complaint ¶ 19. This practice, according to the government, constitutes a conspiracy in restraint of trade in violation of § 1 of the Sherman Act.

All defendants, except for MIT, consented to the entry of a final judgment against them. MIT, as the only remaining defendant, requests this court to transfer the action to the United States District Court for the District of Massachusetts.

## DISCUSSION

Title 28 U.S.C. § 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought." Section 1404 requires the court to make a two-pronged analysis. First, it must determine whether venue properly lies in the District of Massachusetts. Second, the court must determine whether transfer would be in the interest of justice and for the convenience of parties and witnesses.

The government concedes that venue is proper in the District of Massachusetts. Section 12 of the Clayton Act governs venue of suit brought under § 1 of the Sherman Act. Section 12 states:

[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business....

15 U.S.C. § 22 (1973). It is undisputed that MIT resides in Massachusetts. Venue is proper, therefore, in the District of Massachusetts.

In assessing a transfer motion, a court should not lightly disturb plaintiffs' choice of forum and should hold defendants to establishing a strong preponderance in favor of transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Indeed, many courts, pointing to the liberal venue requirements for the government bringing an antitrust suit, have held that in such suits, plaintiffs' choice of forum is entitled to heightened respect. *See e.g. Ford Motor Co. v. Ryan*, 182 F.2d 329 (2d Cir.), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); *Expoconsul Int'l Inc. v. A/E Systems, Inc.*, 711 F.Supp. 730, 735 (S.D.N.Y.1989); *Los Angeles Memorial Coliseum Com. v. National Football League*, 89 F.R.D. 497, 500 (C.D.Cal.1981).

In determining whether transfer would be in the interest of justice and for the convenience of the parties, in addition to the plaintiff's choice of forum, courts should balance the following factors: defendants' residences, the residence of potential witnesses, the situs of events giving rise to the lawsuit, the location of records and documents, and other practical situa-

tions that may expedite the trial and make the trial less expensive than it would be otherwise. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Plum Tree, Inc. v. Stockment,* 488 F.2d 754 (3d Cir.1973).

■ In support of its motion, MIT points out that most of the events alleged in the complaint, including the annual meeting of the overlap group, took place in Massachusetts, most of the relevant documents are located at MIT, and most, if not all, current and former employees of MIT with knowledge of the subject matter of the lawsuit likely reside in Massachusetts. MIT maintains that transferring the action to the District of Massachusetts would cause less disruption and burden on MIT, since many witnesses may be taken away from their responsibilities of running the non-profit educational institution.

The government, alternatively, argues that the site of the overlap group meeting has little significance in a case such as this where "acts in furtherance of the conspiracy occurred in a multitude of districts, including [the Eastern District of Pennsylvania]." The government alleges that representatives of MIT often travelled to various cities across the nation to attend meetings with representatives of overlap group members and that electronic communications concerning the alleged conspiracy undoubtedly were sent to and from all members of the overlap group.

With respect to MIT's arguments relating to the location of witnesses, the government maintains that all of MIT's witnesses are under MIT's control. This factor does not warrant transfer when witnesses are employees of a party and their presence can be obtained by that party. *See Aloha Leasing v. Craig Germain Co.,* 644 F.Supp. 561, 564 n. 4 (N.D.N.Y.1986); *Jordan v. Delaware & Hudson Ry.,* 590 F.Supp. 997, 998 (E.D.Pa.1984). Further, the government speculates that witnesses from the other defendant institutions would not find Boston a more convenient forum than Philadelphia. The government also claims that MIT's argument concerning the location of documents is meritless because the government's documents are not in Boston and MIT has already furnished the government photocopies of relevant documents. Indeed, when documents can be transported and/or easily photocopied, their location is entitled to little weight. *See* 15 Wright, Miller & Cooper Jurisdiction 2d § 3853.

The government contends that its decision to file the action in the Eastern District of Pennsylvania was made before agreement was reached with the settling defendants. This district was chosen, in part, because of its proximity to all original defendants. The government insists that Philadelphia is more convenient than Boston because in Philadelphia there is an Antitrust Division field office where there is guaranteed office space and equipment and a link-up with government computer and word processing systems.

MIT considers the existence of Philadelphia office space and computer hook-ups irrelevant. According to MIT, the government would be able to use as a base a Federal Trade Commission office located in Boston. Although apparently MIT presented such claims in response to the government's suggestion that more convenient office space and equipment is available in Philadelphia than in Boston, such arguments do little to sustain MIT's burden of showing by a strong preponderance that Boston is a more convenient forum.

MIT also implies that the public interest factors, particularly the Eastern District of Pennsylvania's larger caseload, favor transfer. At oral argument, attorney for MIT referred to the recent decision by the Judicial Panel on Multidistrict Litigation transferring all federal district court asbestos personal injury actions to the Honorable Charles R. Weiner of the Eastern District of Pennsylvania. It was suggested that such transfer would not only increase what is already one of the busiest district courts in the nation, but will, contrarily, substantially decrease the District of Mas-

sachusetts' docket. The government, on the other hand, cited the Administrative Office of U.S. Courts' statistics for the year ending June 30, 1990, which evidences that the median time between filing a case and its disposition was faster in the Eastern District of Pennsylvania than in the District of Massachusetts. The court has reviewed other available relevant statistics and has determined that the burden on individual judges of both courts is comparable and, any differences are not overly significant with respect to the present motion. The court is also confident that despite the added responsibility placed on the Eastern District of Pennsylvania by transfer of over 26,000 asbestos cases, the Eastern District of Pennsylvania will continue to steadfastly adhere to its tradition of asserting vigor in resolving matters as expediently and efficiently as possible.[2]

After weighing the relevant factors, the court concludes that this action should not be transferred to the District of Massachusetts. MIT suggests that the government's choice of forum is entitled to less weight because the government chose the most inconvenient forum for the remaining sole defendant. MIT professes that "there is no obvious reason why the Government chose this forum to commence a case which involves MIT as the only active defendant. The government's connection with the Eastern District of Pennsylvania is no more significant than its connection with any other forum in which this action could have commenced." Memorandum of Law at 8. MIT cannot meet its burden by merely establishing that the District of Massachusetts may be a more convenient forum than the Eastern District of Pennsylvania; nor can MIT prevail by demonstrating how the government would not be inconvenienced by transfer. MIT may have philosophical differences concerning the reasons underlying the government's choice of forum. MIT has not demonstrated, however, that it would be inconvenienced to such a degree warranting disregard of the government's choice of venue which is entitled to such deference in an antitrust case.

---

**2.** In any event, for all practical purposes, the transfer of the asbestos cases will have no effect whatsoever on the sitting judge because he recuses himself from all asbestos cases due to the fact that his brother and two other close relatives are practicing attorneys in Philadelphia law firms who are substantially involved in asbestos litigation.