Joshua WEINSTEIN

v.

Robert I. FRIEDMAN, Random House, Inc. and VV Publishing Corp., d/b/a The Village Voice.

Civ. A. No. 93–CV–6834.

United States District Court, E.D. Pennsylvania.

June 27, 1994.

Memorandum Denying Reconsideration Sept. 7, 1994.

---

Martina Walsh McLaughlin, Clifford E. Haines, Litvin, Blumberg, Matusow & Young, Philadelphia, PA, for plaintiff.

Andrew A. Chirls, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, Laura R. Handman, Lankenau Kovner & Kurtz, New York City, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This libel action has been brought before the Court by motion of the defendants to transfer this case to the Southern District of New York or, in the alternative, to dismiss as to defendant Robert Friedman for lack of personal jurisdiction and as to all defendants for failure to state a claim upon which relief can be granted. Inasmuch as the motion to transfer shall be granted, we leave to the New York court the question of the sufficiency of the plaintiff's complaint to state a claim for libel under New York law.

### I. *HISTORY OF THE CASE.*

This lawsuit arises out of defendant Robert Friedman's book entitled *"Zealots for Zion: Inside Israel's West Bank Settlement Movement,"* which was published by defendant Random House, Inc. in 1992. Chapter 7 of the book refers to a group of Princeton University graduates who had emigrated to Israel (including the plaintiff), several of whom now live in Eli, one of the settlements on the West Bank. According to the plaintiff's complaint, Chapter 7 was libelous, portrayed him in a false light and effectively invaded his privacy by publicizing certain private facts about him "which the defendants knew or should have known would be highly offensive to a reasonable person" and which were "un-

related to any legitimate issue." Because an excerpted portion of Chapter 7 was published in the December 1, 1992 edition of the Village Voice, Mr. Weinstein brought this suit against VV Publishing as well as Mr. Friedman and Random House Publishing.

By way of the motion which is now before the court, the defendants primarily seek the transfer of this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) on the grounds that that is a far more appropriate and convenient forum for *all* of the parties to this action. In support of their motion, the defendants additionally argue that since the plaintiff is in actuality a citizen and resident of Israel—not Pennsylvania, venue clearly does not lie in the Eastern District of Pennsylvania. After careful review of the affidavits and exhibits attached to the defendants' motion and the plaintiff's response thereto as well as the plaintiff's deposition, we must agree with the defendants and this case shall therefore be transferred to the U.S. District Court for the Southern District of New York.

## II. *DISCUSSION.*

As is apparent from the laws which govern them, the concepts of venue and forum convenience are closely intertwined. Under 28 U.S.C. § 1391(a) [governing venue generally in cases premised upon diverse citizenship],

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Similarly, 28 U.S.C. § 1404(a) provides the following with respect to change in venue:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The decision whether or not to transfer an action rests within the discretion of the district court, which should analyze the issue according to an individualized, case-by-case consideration of convenience and fairness. *O'Brien v. Goldstar Technology, Inc.,* 812 F.Supp. 383, 385 (W.D.N.Y.1993), citing, *inter alia, Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). In assessing a transfer motion, a plaintiff's choice of forum is a paramount consideration which should not be lightly disturbed and thus the court should hold defendants to establishing a strong preponderance in favor of transfer. *In Re ML–Lee Acquisition Fund, II, L.P.,* 816 F.Supp. 973, 975 (D.Del.1993); *U.S. v. Brown University,* 772 F.Supp. 241, 242 (E.D.Pa.1991), rev'd on other grounds, 5 F.3d 658 (3rd Cir.1993).

Many of the same factors relevant to determining a motion of *forum non conveniens* apply to a motion to transfer pursuant to 28 U.S.C. § 1404, although a district court has much broader discretion when deciding a motion to transfer. *Leonardo Da Vinci's Horse, Inc. v. O'Brien,* 761 F.Supp. 1222, 1229 (E.D.Pa.1991). Thus, in addition to the plaintiff's choice of forum and the residences of the parties and potential witnesses, courts should balance the following factors:

1. the relative ease of access to sources of proof;

2. the availability of compulsory process for attendance of unwilling witnesses;

3. the cost of obtaining attendance of willing witnesses;

4. the possibility of viewing premises, if applicable;

5. all other practical problems that make trial of a case easy, expeditious and inexpensive; and

6. "public interest" factors, including the relative congestion of court dockets, choice of law considerations and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *U.S. v. Brown University, supra,* at 242–243; *Leonardo Da Vinci's Horse, Inc. v. O'Brien, supra,* at 1229.

█ Applying these principles to the case at bar and giving the plaintiff's choice of forum the paramount consideration required, we nevertheless can make no other finding but that the Southern District of New York is not only a more convenient forum but it is the *only* forum in which venue properly lies. The evidence in this regard as testified to by Mr. Weinstein at his April 20, 1994 deposition, reveals that he is from Merion Station, Pennsylvania and that his parents, his brother and his family, and many friends reside in the suburban Philadelphia area. The plaintiff further testified that he has a Pennsylvania driver's license, that he has a joint checking account with his mother and that he owns shares in several U.S. stock/mutual funds (including Vanguard and the Delaware Group) and that he has VISA and DISCOVER credit cards. All of the statements for Mr. Weinstein's joint checking, stock and credit card accounts are sent to his parents' address in Merion Station, PA. Although he files annual U.S. Federal and Pennsylvania state income tax returns, they are prepared by his parents' accountant at his mother's behest. Finally, Mr. Weinstein testified that he keeps some clothing and books at his parent's home, has a U.S. passport and is a U.S. citizen.

On the other hand, Joshua Weinstein also stated that the last full year that he resided in Pennsylvania was 1983, his senior year in high school. He testified that between 1983 and 1987, he resided in Princeton, New Jersey where he was an undergraduate student at Princeton University, spending only the summer of 1987 at his parents' residence. Between the fall of 1987 and March, 1989, he resided in Irvine, California where he was enrolled as a graduate student at the University of California. In May, 1989, Mr. Weinstein moved to Jerusalem, Israel where he has resided ever since, enrolled as a student at various colleges, universities and independent educational institutions. Although he does return for annual visits each year and did return to the Philadelphia area for five months in 1991 to work for the Israel Academy of Liberal Arts (IALA), an institution which he founded together with several of the other Princeton graduates referenced in Mr. Friedman's book, Mr. Weinstein maintained his Jerusalem apartment to which he returned upon completion of his work in Philadelphia. He is no longer registered to vote in Pennsylvania, does not maintain any professional memberships and is not a member of any synagogue or other religious congregations in Pennsylvania. He is also an Israeli citizen and was recently drafted to serve in the Israeli Army where he is now on active duty and has at least one checking account in Israel. He travels with both U.S. and Israeli passports, pays into Israel's national insurance plan and has voted in local Israeli elections. Prior to being drafted, Mr. Weinstein had been pursuing a Ph.D. in philosophy at Hebrew University in Jerusalem; he is presently on leave from the University and hopes that, if he returns to the University after his mandatory one-year tour of duty, he will finish his doctorate sometime in June, 1996.

In addition to all of the foregoing which clearly evinces that Joshua Weinstein is not a Pennsylvania resident, there is likewise insufficient evidence by his own words that he remains a Pennsylvania domiciliary. Although Mr. Weinstein freely acknowledges that his future plans are unsettled and that he has "hoped" that IALA will get off the ground so that he may stay in Israel affiliated with it, he has also "considered" moving to the Eli settlement and would also "consider" taking a position with Harvard University, MIT, Williams College or some other similar institution of higher education not located in southeastern Pennsylvania. Obviously, we cannot even find from this evidence that Pennsylvania is plaintiff's "true, fixed and permanent home and principal establishment to which he has the intention of returning whenever he is absent therefrom." *See: Michelson v. Exxon Research and Engineering Co.,* 578 F.Supp. 289, 230 (W.D.Pa.1984).

Moreover, as the affidavits of Robert Friedman, David Schneiderman and Ellis Levine make clear, the only contacts which the defendants have with Pennsylvania consist

of, for defendant Random House, some ten sales employees, the physical printing of Mr. Friedman's book at an independent bindery and, of course, the shipment and sale of an unspecified number of copies of the book throughout the state. With the exception of the aforementioned book sales, the only connection which defendant Friedman has with Pennsylvania consists of his receipt of a $1,500 stipend from the Shifa Fund, which is based in Pennsylvania and his placement of a few telephone calls to that group and to make preliminary inquiries concerning potential sources of information, none of which involved the plaintiff. Finally, the only connection which the Village Voice has with this Commonwealth is its approximate 2,170 average weekly newsstand sales and subscription distributions. All other writing, sales, editorial, etc. decisions and activities took place in New York City and involved, like Mr. Friedman himself, employees, editors, editorial assistants and writers who reside and work in New York City.

Finally, it should be noted that while many of his potential witnesses reside in the greater Philadelphia metropolitan area, Mr. Weinstein has acknowledged that he also has friends and potential witnesses who are located in the New York City area. What's more, when he returns to the U.S. for visits, the plaintiff himself flies into and out of JFK Airport in New York City. Thus, weighing all of the factors enunciated above, we conclude that the defendants have carried their burden of demonstrating that venue properly lies and litigation of this case would be more convenient for the parties and witnesses in the Southern District of New York. Accordingly, it is to that district that this case shall be transferred pursuant to the attached order.

### ORDER

AND NOW, this 27th day of June, 1994, upon consideration of Defendants' Motion to Transfer this Action or to Dismiss the Plaintiff's Complaint, it is hereby ORDERED that, for the reasons set forth in the foregoing Memorandum, the Motion is GRANTED and this action is hereby TRANSFERRED to the United States District Court for the Southern District of New York.

### *MEMORANDUM*

Plaintiff, Joshua Weinstein, has filed a Motion for Reconsideration of this Court's Order of June 27, 1994, in which this Court transferred this action to the Southern District of New York. The purpose of a motion to reconsider is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). Having reconsidered the June 27, 1994 decision, the Court finds that the ruling is to remain in full force and effect.

Plaintiff is a dual citizen of the United States and Israel. He has brought suit in the Eastern District of Pennsylvania against defendant Robert I. Friedman, author of the book *Zealots for Zion: Inside Israel's West Bank Settlement Movement,* the book's publisher, Random House and *The Village Voice,* which printed a chapter of the book in its newspaper. Friedman's book allegedly libels Weinstein.

Defendants moved to transfer the action to the Southern District of New York, and in the June 27, 1994 Order, the motion was granted. The June 27, 1994 decision noted that Plaintiff's contacts with Pennsylvania did not rise to the level where we could find that Pennsylvania was Plaintiff's "true, fixed and permanent home and principal establishment to which he has the intention of returning whenever he is absent therefrom." Order of June 27, 1994 at 7, *quoting Michelson v. Exxon Research and Eng'g Co.,* 578 F.Supp. 289, 290 (W.D.Pa.1984). That finding, combined with our second finding that Defendants' contacts with Pennsylvania were minimal, led to the holding that venue in Pennsylvania was inappropriate.

Plaintiff's Motion to reconsider is based on "recently obtained, ... enlightening information" regarding Friedman's contacts with Pennsylvania. Plaintiff's Motion to Reconsider at 1. This "new" information was gathered in the course of a deposition Plaintiff took of Friedman approximately three weeks before this Court's June 27, 1994 Order was

entered.[1] It is necessary to review the information this Court had about Friedman when we entered the June 27, 1994 Order to understand why the allegedly new information does not affect that Order.

As of June 27, 1994, this Court was aware that Friedman's book was physically printed in Pennsylvania and that it had been shipped and sold in unknown quantities within Pennsylvania. In addition, the Court knew that Friedman had received a research stipend of $1,500 from a fund based in Pennsylvania and placed several telephone calls to that fund in Pennsylvania.

 Plaintiff's Motion to reconsider adds to that information the further news that the $1,500 stipend accounted for a quarter of all Friedman's research funding for the book. In addition, Friedman was interviewed twice for "Fresh Air," a National Public Radio-syndicated show based out of Pennsylvania, was interviewed by the *Philadelphia City Paper* and participated in radio and television programs that were broadcast into Pennsylvania. Moreover, Friedman has actually been in Pennsylvania three times in the past seven years to interview people for different books and articles.

This information is valuable to a discussion of whether Friedman is subject to personal jurisdiction in Pennsylvania, but is not helpful for deciding whether to transfer venue. *Leonardo Da Vinci's Horse, Inc. v. O'Brien,* 761 F.Supp. 1222, 1229 (E.D.Pa.1991). This Court's June 27, 1994 decision was largely based on Plaintiff's lack of domicile in Pennsylvania. The absence of any operative facts in Pennsylvania and the convenience to the parties of transferring to New York added to the decision to transfer.

Accordingly, because the new information is not such a subsequent change of the facts that makes the original decision fundamentally wrong (*Harsco,* 779 F.2d at 909), the Order of June 27, 1994 stands.

1. We note that Plaintiff requested this Court to delay decision on Defendants' Motion to Transfer until "mid-June" so that Plaintiff would have an opportunity to utilize the deposition of Friedman scheduled for June 8, 1994. Letter from James W. Gicking to the Honorable J. Curtis Joyner of 5/23/94. Although this Court delayed decision until late June, Plaintiff did not present the Court with any information from that deposition until now.

*ORDER*

AND NOW, this 6th day of September, 1994, upon consideration of the Plaintiff's Motion for Reconsideration of this Court's Order of June 27, 1994 Transferring This Action, and replies thereto, the Motion is hereby DENIED.