**MED–TEC, INC., an Iowa Corporation, Plaintiff,**

v.

**Jeffrey V. KOSTICH, an individual, and Smithers Medical Products, Inc., an Ohio Corporation, Defendants.**

No. C 97–4047–MWB.

United States District Court, N.D. Iowa, Western Division.

Oct. 28, 1997.

Kirk M. Hartung, Jeffrey D. Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, IA, for Plaintiff.

Kenneth A. Godlewski of Oldham & Oldham Co., L.P.A., Akron, OH, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................1318

II. FACTUAL BACKGROUND ........................................1318
 A. Facts Drawn From The Complaint ......................................1318
 B. Facts Related Solely To Question Of Personal Jurisdiction ..................1319

III. LEGAL ANALYSIS .........................................1320
 A. Standards For Defendants' Motion To Dismiss ...........................1320
 B. Challenges To The Declaratory Judgment Claim .........................1322
 C. Challenge To Personal Jurisdiction ....................................1325
 1. Analytical process ............................................1326
 2. Long-arm authority ...........................................1327
 3. Minimum Contacts............................................1327

 a. Specific vs. general jurisdiction ................................1328
 b. The five-factor test ........................................1328
 c. Quantity, quality, and relatedness of contacts .....................1329

 D. Transfer Of Case ...............................................1331

IV. CONCLUSION ................................................1332

Defendants' motion to dismiss in this patent litigation raises threshold questions of both subject matter and personal jurisdiction. Plaintiff, an Iowa corporation which sells medical related products, including an "overhead arm positioner," brought this declaratory judgment action against defendants, the owner and exclusive licensee of two United States Patents, seeking a declaration of noninfringement, invalidity, and unenforceability of United States Patent Numbers 5,433,220 and 5,623,949. Defendants have moved to dismiss the complaint on the grounds of lack of subject matter jurisdiction and lack of personal jurisdiction. Resolution of this motion requires the court to evaluate and assess whether an actual controversy existed between the parties at the time of the filing of the lawsuit, and whether defendants have sufficient contacts with the State of Iowa to maintain personal jurisdiction over them.

## I. INTRODUCTION

On June 6, 1997, plaintiff Med–Tec, Inc. ("Med–Tec") filed its complaint in this case seeking a declaratory judgment that United States Patent Nos. 5,433,220 and 5,623,949 are invalid, unenforceable, and are not infringed by Med–Tec. On July 22, 1997, defendants Jeffrey V. Kostich and Smithers Medical Products, Inc. ("Smithers") filed a motion to dismiss. In their motion to dismiss, defendants seek dismissal of the declaratory judgment complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that an actual case or controversy as required by 28 U.S.C. § 2201 is lacking in this case. Defendants alternatively moved to dismiss the complaint on the ground of lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). As an alternative to dismissal, defendants move to transfer the case to the Northern District of Ohio. Med–Tec filed a timely resistance to defendants' motion to dismiss. Med–Tec contends that an actual case and controversy exist here as a result of correspondence it received from defendants' counsel. Similarly, Med–Tec asserts that as a result of receiving correspondence from defendants' counsel threatening litigation, defendants have sufficient minimum contacts with the State of Iowa for this court to assume personal jurisdiction over them.

Med–Tec requested oral argument on the motion to dismiss. The court granted that request and held telephonic arguments on defendants' motion on October 22, 1997. At the hearing, plaintiff Med–Tec was represented by Kirk M. Hartung and Jeffrey D. Harry of Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa. Defendants were represented by Kenneth A. Godlewski of Oldham & Oldham Co., L.P.A., Akron, Ohio.

## II. FACTUAL BACKGROUND

### A. Facts Drawn From The Complaint

Because defendants' motion to dismiss will be considered on the basis of the face of the complaint, the court looks to the factual allegations found in the complaint and attached documents for the necessary factual background to the present dispute.

Plaintiff Med–Tec is a corporation organized and existing under the laws of Iowa, with its principal place of business located in Orange City, Iowa. Defendant Jeffrey V. Kostich is an individual who resides in North Canton, Ohio. He is the inventor and owner of United States Patent Numbers 5,433,220 and 5,623,949 (the '220 and '949 patents respectively). Defendant Smithers is a corporation organized under the laws of the State of Ohio, with its principal place of business in North Canton, Ohio. Smithers holds an exclusive license for the '220 and '949 patents.

On May 15, 1997, defendants' counsel, Mark A. Watkins, sent a letter to Med–Tec's

counsel, Kirk M. Hartung, concerning the '220 and '949 patents. Watkins' May 15, 1997, states in full:

As you are well aware, our firm represents Jeffrey V. Kostich and Smithers Medical Products Inc. on intellectual property matters. This letter is intended to serve express notice to your client, Med–Tec, Inc. concerning two Kostich patents (U.S. Patent Nos. 5,433,220 and 5,633,949) relating to arms-over-head positioning devices. Patent No. 5,633,949 just issued on April 29, 1997. Copies of both patents are enclosed for your convenience.

It has come to our attention that your client Med–Tec, sells a product referred to as an "overhead arm positioner" and identified as Model Nos. MT–450 and MT–455 in its most recent catalog. From a review of the literature and photographs of the product, it would appear that this product infringes one or more claims in one or both of the aforementioned patents.

In light of the foregoing and on behalf of Smithers and Mr. Kostich, we must request that Med–Tec immediately **CEASE AND DESIST** all further sales of the referenced Med–Tec products. Further, no later than June 6, 1997, we request a complete accounting as to the number of these units manufactured, used, sold or offered for sale by Med–Tec since the issuance of the '220 patent on July 18, 1995, coupled with a proposal of compensation for past infringement.

Although Mr. Kostich has clear standing to initiate legal action in federal courts having jurisdiction over this matter, he has requested that I make an effort to resolve this matter before initiating any legal action. I think that it would be in the best interest for all concerned to attempt at avoiding a repeat of the previous litigation. At this time, I cannot rule out the possibility of a license agreement as a means of resolving this matter. I look forward to receiving Med–Tec's response at your earliest convenience, but certainly no later than June 6, 1997. Please feel free to contact me with any questions.

Compl., Exhibit D. Following receipt of the May 15, 1997, letter Med–Tec initiated this lawsuit.

### B. Facts Related Solely To Question Of Personal Jurisdiction

Defendants have supplied affidavits in support of their request to dismiss the complaint on the ground of lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). The court has extracted the following facts, all uncontroverted, from those affidavits which relate to defendants' contacts with the State of Iowa.

Kostich has no interest in, use, or possession of any real estate, bank accounts, or personal property in the State of Iowa. He has never availed himself of the courts of the State of Iowa by filing suit here. Kostich has never visited the State of Iowa. He does not maintain an office, manufacturing facility, telephone, agents, salespersons or distributors in the State of Iowa.

Smithers is in the business of manufacturing and selling various medical products, including patient positioning devices. Smithers does not maintain any offices, manufacturing facilities, telephones, agents, salespersons, or distributors in the State of Iowa. Smithers does not have any interest in, use, or possession of any real estate, bank accounts, or personal property in the State of Iowa. No Smithers' personnel has visited Iowa for conventions or any other business related reason. Smithers has never sold any products covered by either the '220 and '949 patents in the State of Iowa. Smithers does not directly advertise within Iowa. Smithers has advertised its products in national medical magazines and journals. Smithers' sales, advertising, billing, and record keeping are all conducted from a facility in North Canton, Ohio. All shipping is done from North Canton, Ohio. Smithers, however, has made sold products in Iowa. In 1995, Smithers had total sales of $207.20 in Iowa, representing 0.019 percent of its total sales for the year. In 1996, Smithers had total sales of $250.00 in Iowa, representing 0.023 percent of its total sales for the year. As of July 14, 1997, Smithers has sold $230.00 in products in Iowa. Smith-

ers considers orders from customers to be "offers to buy" that are accepted at Smithers' offices in North Canton, Ohio. Smithers has never availed itself of the courts of the State of Iowa by filing suit here.

## III. LEGAL ANALYSIS

### A. Standards For Defendants' Motion To Dismiss

Defendants claim that Med–Tec cannot state a federal claim upon which to assert jurisdiction because the facts, as alleged in the complaint, fail to create an actual controversy. The federal district courts have always been courts of limited jurisdiction. *See* U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803)); *see also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1171 (8th Cir.1994) (federal court jurisdiction is limited by Article 1 of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra); Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Assn.,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).

■ "The parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 2287, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent,") citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274˙ (1978); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, and n. 17, 71 S.Ct. 534, 542 n. 17, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 8 Pet. 148, 149 33 U.S. 148, 149, 8 L.Ed. 898 (1834)); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). Even where " 'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.' " *White v. Nix,* 43 F.3d 374, 376 (8th Cir.1994) (quoting *Lewis v. United States Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir.1993). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994); *Sanders,* 823 F.2d at 216. However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." *Id.* Because jurisdiction is a threshold issue for the court, the district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States,* 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990), which in

turn quotes *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994).

■ For the court to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 731–32 (11th Cir. 1982).

> . . . . .

> If the [defendant] wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn [v. United States],* 918 F.2d [724,] 730 (citing *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986)).

*Id.*

■ The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 470 (8th Cir.1993). If material facts are adjudicated by the court in determining its jurisdiction, the appellate court will review the findings of fact for clear error. *Id.* Where the material facts are not in dispute, the appellate court will review the court's determination that it lacks jurisdiction de novo. *Id.; see also Southern Council of Indus. Workers v. Ford,* 83 F.3d 966, 968 (8th Cir.1996) (citing *Osborn v. United States,* 918 F.2d 724, 730 (8th Cir.1990)); *Thompson v. Covington,* 47 F.3d 974, 975 (8th Cir.1995) (citing *Drevlow,* 991 F.2d at 470); *Christopher Lake Dev. Co. v. St. Louis County,* 35 F.3d 1269, 1273 (8th Cir.1994) (citing *Osborn,* 918 F.2d at 730). If the court considers matters outside of the pleadings, however, it may not, without notice to the parties, convert a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) into a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which is subject to summary judgment disposition, because to do so would not allow the parties to respond to the issue the court is weighing for summary judgment. *Layton v. United States,* 919 F.2d 1333, 1334–35 (8th Cir.1990).[1]

In *Osborn,* 918 F.2d 724, the Eighth Circuit Court of Appeals presented its most exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

> The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a

---

1. In *Layton,* the court noted that a 12(b)(1) motion is distinguishable from a 12(b)(6) motion on the ground that the Rules expressly provide that the latter is subject to conversion into a summary judgment motion, while no such provision exists for a 12(b)(1) motion. *Layton,* 919 F.2d at 1335. However, courts have approved such a conversion of a 12(b)(1) motion when appropriate. *Id.* (citing *Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th Cir.1986)). There is, however, an exception to the notice requirement before the court makes a conversion into a summary judgment motion articulated in *Van Leeuwen v. United States Postal Serv.,* 628 F.2d 1093, 1095 (8th Cir.1980), which requires that if both parties have submitted affidavits and exhibits outside the pleadings which they understood the district court has accepted for consideration, then the non-moving party has notice of the court's intention to treat the motion to dismiss as one for summary judgment. *Id.* (concluding that the court could not invoke the *Van Leeuwen* exception on the basis of a unilateral submission of exhibits by the moving party).

claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary.... [Citations omitted.]

The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson [v. Tucker]*, 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn*, 918 F.2d at 729.

The *Osborn* court found the distinction between facial and factual attacks on the complaint under Rule 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), and *Mortensen v. First Fed. Sav. & Loan Assn.*, 549 F.2d 884, 891 (3d Cir.1977)). The court stated that

[i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief.'" In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n. 6 (citations omitted). A factual challenge to jurisdiction under Rule 12(b)(1) is unique:

[H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 730 (quoting *Mortensen*, 549 F.2d at 891). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, "'any rational mode of inquiry will do.'" *Id.* (quoting *Crawford*, 796 F.2d at 929).

Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford*, 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.*

*Id.* Here, no party has requested an evidentiary hearing. With these standards in mind, the court turns to the defendants' specific challenges to the adequacy of Med–Tec's declaratory judgment claim as alleged.

## B. Challenges To The Declaratory Judgment Claim

Jurisdiction over Med–Tec's claim is grounded solely upon the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The De-

claratory Judgment Act provides, in pertinent part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). As the Federal Circuit Court of Appeals has observed:

> The purpose of the declaratory action is to permit a threatened party to resolve its potential liability, but only when the relationship has progressed to an actual controversy, as required by Article III of the Constitution. Although access to declaratory procedures in patent cases does not necessarily require an explicit threat of suit, to create an actual controversy there must be more than ongoing license negotiations.

*Phillips Plastics v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1053 (Fed.Cir.1995)

The Federal Circuit Court of Appeals has reviewed the historical situation that gave rise to judicial review of a patent's validity under the Declaratory Judgment Act absent an action for infringement:

> [A] patent owner engages in a *danse macabre,* brandishing a Damoclean threat with a sheathed sword. Guerilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests'. The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual "controversy" required by the Act.

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734–35 (Fed.Cir.1988) (citations omitted); *see Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95–96, 113 S.Ct. 1967, 1974–75, 124 L.Ed.2d 1 (1993).

■ The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction. *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,* 90 F.3d 479, 481 (Fed.Cir.1996); *Spectronics Corp. v. H.B. Fuller,* 940 F.2d 631, 633–34 (Fed.Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991); *Grain Processing Corp. v. American Maize–Products Co.,* 840 F.2d 902, 905 (Fed.Cir.1988). As the Federal Circuit Court of Appeals has noted: " 'The "actual controversy" requirement is met only if there is a justiciable case or controversy in the constitutional sense.' " *GAF Bldg. Materials Corp.,* 90 F.3d at 481 (quoting *Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398 (Fed.Cir.1984) )("[T]he case or controversy requirement for declaratory judgment jurisdiction has been defined to be the same as the case or controversy requirement in the constitutional sense."). In *Arrowhead,* the court commented:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Arrowhead Indus. Water, Inc.,* 846 F.2d at 735 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

■ The party bringing the declaratory judgment action bears the burden of proving an actual controversy. *West Interactive Corp. v. First Data Resources,* 972 F.2d 1295, 1297 (Fed.Cir.1992). The Federal Circuit Court of Appeals has approved a two-part test to determine whether an "actual controversy" exists in an action for declaratory judgment of patent invalidity or noninfringement:

> "First, the defendant in such an action must have engaged in conduct that created on the part of the declaratory plaintiff a

reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. Next, the plaintiff ... must have actually produced the accused device or have actually prepared to produce such a device." *GAF Bldg. Materials Corp.,* 90 F.3d at 481 (quoting *Jervis B. Webb,* 742 F.2d at 1398–99 (citations omitted)); *accord EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997); *Phillips Plastics,* 57 F.3d at 1052; *West Interactive Corp. v. First Data Resources, Inc.,* 972 F.2d 1295, 1297 (Fed.Cir.1992); *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 887 n. 2 (Fed.Cir.1992); *Spectronics Corp.,* 940 F.2d at 635; *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987).[2] The first prong requires the court to examine the patent holder's conduct to ascertain whether it has created an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues. *See Spectronics Corp.,* 940 F.2d at 634; *see also Arrowhead Indus. Water, Inc.,* 846 F.2d at 735; *Goodyear Tire & Rubber Co.,* 824 F.2d at 955; *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986). The second prong " 'looks to the accused infringer's conduct and ensures that the controversy is sufficiently real and substantial.' " *Spectronics Corp.,* 940 F.2d at 634 (quoting *Lang v. Pacific Marine and Supply Co.,* 895 F.2d 761, 764 (Fed.Cir. 1990)).

■■■■ "The existence of a patent held by a competitor is insufficient basis for a declaratory action to invalidate the patent." *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 981 (Fed.Cir.1993); *accord EMC Corp.,* 89 F.3d at 811. Similarly, "[a] patentee's offer of a license, without more, is insufficient to establish the predicate for declaratory judgment jurisdiction." *EMC Corp.,* 89

F.3d at 811 (citing *Indium Corp.,* 781 F.2d 879, 883). Likewise, neither a patentee's proposal of license negotiations nor ongoing license negotiations are sufficient, *EMC Corp.,* 89 F.3d at 811; *Phillips Plastics Corp.,* 57 F.3d at 1053. However, an express threat of litigation is not required to establish a case or controversy. *Shell,* 970 F.2d at 888; *Arrowhead,* 846 F.2d at 736; *Goodyear Tire & Rubber Co.,* 824 F.2d at 956. A declaratory judgment plaintiff may claim reasonable apprehension of future litigation sufficient to create a case or controversy if the patentee demands royalties on a patent license, sues or threatens to sue the plaintiff's customers, initiates litigation against manufacturers of similar products, or publishes a notice of infringement in trade journals. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 881, 881 n. 6 (Fed.Cir.1983). In the absence of an express charge of infringement, the district court must look to the totality of the circumstances to ascertain whether the plaintiff has established a reasonable apprehension. *Shell,* 970 F.2d at 889; *Spectronics Corp.,* 940 F.2d at 634; *C.R. Bard,* 716 F.2d at 880.

As the Federal Circuit Court of Appeals observed only last year in its decision in *EMC Corp.:*

This court's two-part test for declaratory judgment jurisdiction is designed to police the sometimes subtle line between cases in which the parties have adverse interests and cases in which those adverse interests have ripened into a dispute that may properly be deemed a controversy. The test for finding a "controversy" for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling. The need to look to substance rather than form is especially important in this area, because in many instances (as in this case) the parties are sensitive to the prospect of a declaratory judgment action and couch their exchanges in terms designed either

**2.** The precise sequence by which a court considers the two prongs is irrelevant. The Federal Circuit Court of Appeals has, in some cases, reversed the order in which it has considered the two prongs of the test. *See generally EMC Corp.,* 89 F.3d at 810 ("First, the plaintiff must actually produce or be prepared to produce an allegedly infringing product. Second, the patentee's conduct must have created an objectively reasonable apprehension on the part of the plaintiff that the patentee will initiate suit if the activity in question continues.").

to create or defeat declaratory judgment jurisdiction. In the end, the question is whether the relationship between the parties can be considered a "controversy," and that inquiry does not turn on whether the parties have used particular "magic words" in communicating with one another. *EMC Corp.*, 89 F.3d at 811–12.

The parties do not dispute that Med–Tec satisfies the second prong of the test. The court therefore need only address the question of whether Med–Tec was placed in reasonable apprehension that it would be sued by defendants for infringing the '220 and '949 patents.

■ Here, the court concludes that Med–Tec has met its burden of demonstrating that an actual controversy is present. The undisputed evidence presented makes it clear that defendant's letter of May 15, 1997, created a reasonable apprehension on Med–Tec's part that defendants would bring suit against it if Med–Tec did not satisfy defendants' demands. The letter sets a deadline for Med–Tec to cease sales of its products, to make a complete accounting of the sales of Med–Tec's products, and to make "a proposal of compensation for past infringement." The letter further makes reference to prior litigation between the parties, and that Kostich had clear standing to sue. The clear import of the letter is that defendants had already decided Med–Tec was infringing the '220 and '949 patents and that defendants intended to file suit unless Med–Tec met the terms of the letter.

Defendants contend that the May 15, 1997, letter was merely an invitation to Med–Tec to engage in licensing negotiations, and thus was the type of communication that the Federal Circuit Court of Appeals has previously held did not create a justiciable controversy. *See Phillips Plastics Corp.*, 57 F.3d at 1053. Defendants' reliance on the *Phillips Plastics Corp.* decision, however, is misplaced. In *Phillips Plastics Corp.*, the patentee had not stated nor suggested that it would pursue legal recourse if it were not satisfied with the outcome of the proposed licensing negotiations. *Id.* The Federal Circuit Court of Appeals held that such circumstances were not sufficiently adverse to create a justiciable controversy. *Id.* The holding in *Phillips Plastics,* however, is inapplicable in a case such as the one presented here, where defendants have accused Med–Tec of infringing their patents, made specific demands on Med–Tec, and issued thinly veiled threats of resorting to litigation if their demands are not met.

■ The finding that subject matter jurisdiction exists does not end the inquiry concerning defendants' motion to dismiss. As the Supreme Court recently affirmed, the Declaratory Judgment Act accords district courts "a unique breadth of ... discretion to decline to enter a declaratory judgment." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995). Such discretion is not unfettered, however, and must be exercised in accordance with the principles of the Declaratory Judgment Act and sound judicial administration. *EMC Corp.*, 89 F.3d at 813–14. Here, defendants urge the court to exercise its discretion to decline to hear this action. The court declines defendants' request because the dispute between the parties is ripe for adjudication and declining jurisdiction would not be in keeping with the principles of the Declaratory Judgment Act.

Therefore, because the court finds that Med–Tec has met its burden of demonstrating that an actual controversy is present, defendants' motion to dismiss is denied. The court must next consider defendants' alternative request that the complaint be dismissed on the ground of lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).

### C. Challenge To Personal Jurisdiction

■ The general rule in patent cases arising in district courts is that the Federal Circuit applies the law of the circuit where appeals from the district court would normally lie to legal questions which are not unique to patent law and its own precedent to substantive questions unique to patent law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir.), *cert. dismissed,* 512 U.S. 1273, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994); *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1439–40 (Fed.Cir.

1984) (en banc); *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75 (Fed.Cir.1984). However, the Federal Circuit has recently concluded that aspects of personal jurisdiction are "intimately related to substantive patent law" and that, as a consequence, Federal Circuit law applies, rather than that of the regional circuit, when determining the issue of whether the court has personal jurisdiction over an out-of-state defendant. *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 428 (Fed.Cir. 1996); *Akro Corp. v. Luker,* 45 F.3d 1541 (Fed.Cir.), *cert. denied,* 515 U.S.·1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995); *Beverly Hills Fan Co.,* 21 F.3d at 1564. Therefore, the court looks to Federal Circuit precedents in analyzing the personal jurisdictional issues.

▬ In order to defeat a motion to dismiss for lack of personal jurisdiction, Med–Tec, as the non-moving party, need initially make only a *prima facie* showing of jurisdiction. *United States v. Ziegler Bolt and Parts Co.,* 111 F.3d 878, 880 (Fed.Cir. 1997); *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996); *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1386 (8th Cir.1995); *Dakota Indus., Inc. v. Ever Best Ltd.,* 28 F.3d 910, 914 (8th Cir.1994) (hereinafter *Ever Best* ); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir. 1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991) (hereinafter *Dakota Indus.*). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Dakota Indus.,* 946 F.2d at 1387; FED. R. CIV. P. 12(b)(2); *see also Kevlin Serv., Inc. v. Lexington State Bank,* 46 F.3d 13, 14 (5th Cir. 1995) ("When the district court rules on the motion without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper," quoting *Wilson v. Belin,* ·20 F.3d

644, 647–48 (5th Cir.), *cert. denied,* 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994)).

▬ If the court does not hold a hearing and instead relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the non-moving party and resolve all factual conflicts in favor of that party. *Dakota Indus.,* 946 F.2d at 1387; *see also General Elec. Capital Corp. v. Grossman,* 991 F.2d 1376, 1387 (8th Cir.1993) (citing *Dakota Indus.*).[3] The court's analysis of the adequacy of a non-moving party's *prima facie* showing of personal jurisdiction requires that the court first examine whether the exercise of jurisdiction is proper under the forum state's long-arm authority, and then address whether the exercise of personal jurisdiction comports with due process. *Bell Paper,* 22 F.3d at 818; *Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir.), *cert. denied,* 510 U.S. 814, 114 S.Ct. 63, 126 L.Ed.2d 32 (1993); *Dakota Indus.,* 946 F.2d at 1387–88; *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991); *Midland Forge, Inc. v. Letts Indus., Inc.,* 395 F.Supp. 506, 513 (N.D.Iowa 1975) (The exercise of personal jurisdiction must be based on the existence of a statute or rule authorizing the assertion of jurisdiction).

The court must now decide whether plaintiff Med–Tec has made a *prima facie* showing that this court may exercise personal jurisdiction over defendants. The court concludes that Med–Tec has not met this burden.

### 1. Analytical process

The determination of whether or not a court has personal jurisdiction over a nonresident defendant involves a two-step analysis. *Genetic Implant Sys., Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1457–58 (Fed.Cir.1997); *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 427 (Fed.Cir.1996); *Northrup King Co.,* 51 F.3d at 1386–87 (citing *Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40, 42 (8th Cir.1988)). First, the applicable state long-arm statute or rule must be

---

**3.** The parties have not requested that the court conduct an evidentiary hearing regarding the

question of personal jurisdiction over defendants.

satisfied, and, second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment. *Genetic Implant Sys., Inc.*, 123 F.3d 1455, 1457–58; *Viam Corp.*, 84 F.3d at 427; *Northrup King Co.*, 51 F.3d at 1386–87. When a state construes its long-arm statute or rule to confer jurisdiction to the fullest extent permitted by the due process clause, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process. *See Viam Corp.*, 84 F.3d at 427; *see also Bell Paper*, 22 F.3d at 818; *Soo Line R.R.*, 950 F.2d at 528.

### 2. Long-arm authority

 In this case, the long-arm authority for defendants' service was Iowa Rule of Civil Procedure 56.2, which gives Iowa courts jurisdiction to the fullest constitutional extent.[4] *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980). Because the rule has been interpreted to confer jurisdiction to the fullest extent permitted by the due process clause, the personal jurisdiction inquiry here collapses into the single question of whether exercise of personal jurisdiction comports with due process. *Bell Paper*, 22 F.3d at 818; *Soo Line R.R.*, 950 F.2d at 528. The court concludes that it does not.

### 3. Minimum Contacts

The court may exercise personal jurisdiction over a defendant where the defendant has sufficient minimum contacts with the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Bell Paper*, 22 F.3d at 818.

> Due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158; *Northrup King Co.*, 51 F.3d at 1386 (exercise of personal jurisdiction must be "consistent with traditional notions of fair play and substantial justice," quoting *International Shoe*); *Bell Paper*, 22 F.3d at 818 ("Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court summarized these due process requirements:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
>
> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.... Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a sub-

---

**4.** Iowa Rule of Civil Procedure 56.2 provides, in pertinent part, that

> [e]very corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this

state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 56.2.

stantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp.,* 471 U.S. at 471–76, 105 S.Ct. at 2181–84 (citations omitted); *see Akro Corp.,* 45 F.3d at 1545 (citing same standards); *see also Jarvis and Sons, Inc. v. Freeport Shipbuilding and Marine Repair, Inc.,* 966 F.2d 1247, 1249–50 (8th Cir.1992) (citing same standards); *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575–76 (8th Cir.) (citing same standards), *cert. denied,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992); *Dakota Indus.,* 946 F.2d at 1389 (citing same standards). In assessing the defendants' "reasonable anticipation" of being haled into court, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Bell Paper,* 22 F.3d at 818; *Soo Line R.R.,* 950 F.2d at 528–29; *see also Northrup King Co.,* 51 F.3d at 1386–87.

### a. Specific vs. general jurisdiction

There are two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Bell Paper,* 22 F.3d at 819. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Id.* at 415, 104 S.Ct. at 1872.

Specific jurisdiction may not be exercised where none of the actions complained of occurred within or had any connection to the forum state. *Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir.1993); *see Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872 (specific jurisdiction considers whether the cause of action asserted against the non-resident defendant "arises out of or relates to" the non-resident's contacts with the forum). The non-resident's contact with the forum may be based on contacts by its representative, because the Supreme Court has held that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." *Burger King Corp.,* 471 U.S. at 480 n. 22, 105 S.Ct. at 2186 n. 22. For general jurisdiction to exist, the non-resident defendant must be engaged in "continuous and systematic general business contacts" within the forum. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1872–73.

Plainly, in this case, Med–Tec can only be attempting to assert specific jurisdiction over defendants, because on facts not in dispute, defendants have had only limited contact with the State of Iowa. Thus, Med–Tec must be attempting to assert specific jurisdiction over defendants on the ground that its cause of action arose from or was related to defendants' actions within the forum state. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872; *Sondergard,* 985 F.2d at 1392.

### b. The five-factor test

The test for evaluating the propriety of jurisdiction under the due process clause requires the balancing of

(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies.

*Viam Corp.,* 84 F.3d at 429 (citing *World Wide Volkswagen Corp.,* 444 U.S. 286, 100 S.Ct. 559).

■ More specifically, the Eighth Circuit Court of Appeals has concluded that a defendant has insufficient contact with the forum

state where the defendant has no office or agent or representative or employees in the forum state, does not do business in the forum state, *Jarvis and Sons v. Freeport Shipbuilding*, 966 F.2d 1247, 1250 (8th Cir. 1992), has no bank accounts or property in the forum, does not advertise or solicit any business in the state, and does not design products for use in the state. *Gould*, 957 F.2d at 576. The record in this case shows that Kostich does not have any of these traditional contacts with Iowa while Smithers' only possible contact is that it indirectly advertises and solicits business within the state through its placement of advertisements in national medical magazines and journals.

### c. *Quantity, quality, and relatedness of contacts*

In this case, rather than relying on traditional contacts in the minimum contacts analysis, Med–Tec asserts personal jurisdiction here chiefly on the basis of defendants' May 15, 1997, cease and desist letter to it. Thus, initially, the question here is whether the act of sending a cease and desist letter into the forum state constitutes sufficient contacts with the forum state for the court to exercise specific jurisdiction over the sending parties. The vast majority of courts that have considered this question have determined that the mere sending of an infringement letter into the forum state is not enough to confer jurisdiction. In *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455 (Fed.Cir. 1997), the Federal Circuit Court of Appeals recently reiterated that the mere sending of an infringement letter into the forum state is not enough to confer jurisdiction:

> sending infringement letters, without more activity in a forum state, is not sufficient to satisfy the requirements of due process. Other activities are required in order for a patentee to be subject to personal jurisdiction in the forum.

*Id.* at 1458–59. A fair number of other courts have issued similar decisions. *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir.1983) ("It is difficult to characterize [defendant's] letter alleging infringement in an unspecified locale and threatening litiga-tion in an unspecified forum as an activity invoking the 'benefits and protection of New York law.' "); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 196–97 (1st Cir.1980) (holding that the mere sending of an infringement letter into the forum state is not enough to confer jurisdiction); *Cascade Corp. v. Hiab–Foco AB*, 619 F.2d 36, 38 (9th Cir. 1980) (letters from defendant claiming patent infringement were not enough to invoke personal jurisdiction under Oregon long-arm statute; to do so would offend traditional notions of fair play and substantial justice); *Electronic Realty Assocs., L.P. v. Paramount Pictures Corp.*, 935 F.Supp. 1172, 1176 (D.Kan.1996) (holding that defendant's "mailing of one cease and desist letter into the forum state does not satisfy the requirements of the Kansas long-arm statute because that letter is unrelated to the subject matter of the claims in plaintiff's declaratory judgment action."); *Stairmaster Sports/Medical Prods., Inc. v. Pacific Fitness Corp.*, 916 F.Supp. 1049, 1053 (W.D.Wash.1994) (holding that patent holder's sending of several letters into forum state threatening litigation did not justify assertion of specific jurisdiction over patent holder); *Zumbro, Inc. v. California Natural Prods.*, 861 F.Supp. 773, 781 (D.Minn.1994) (concluding that the sending of infringement letters did not support the exercise of specific jurisdiction); *Unistrut Corp. v. Baldwin*, 815 F.Supp. 1025, 1027 (E.D.Mich.1993) (holding that defendant's sending of letters into forum state threatening to bring suit were insufficient to establish specific personal jurisdiction); *Ryobi Am. Corp. v. Peters*, 815 F.Supp. 172, 176 (D.S.C. 1993) (holding that the mere writing of a letter even if considered threatening is not sufficient to establish minimum contacts with the forum state); *BIB Mfg. Co. v. Dover Mfg. Co.*, 804 F.Supp. 1129, 1133 (E.D.Mo. 1992) (holding that sending of cease and desist letters do not confer personal jurisdiction); *E.J. McGowan & Assocs., Inc. v. Biotechnologies, Inc.*, 736 F.Supp. 808, 812 (N.D.Ill.1990) (holding that the sending of infringement letters, in and of itself, does not satisfy the due process clause); *Classic Golf Co. v. Karsten Mfg. Co.*, 231 U.S.P.Q. (BNA) 884, 1986 WL 8953, at *1 (N.D.Ill. Aug. 8,

1986) ("The sending of infringement letters has been uniformly held insufficient by itself to satisfy the minimum contacts requirement."); *Starline Optical Corp. v. Caldwell,* 598 F.Supp. 1023, 1027 (D.N.J.1984) (holding that sending of infringement letter was insufficient and noting that "were the dispatch of notice-of-infringement letters to operate as a waiver of objection to in personam jurisdiction, the result would be a chilling effect on assertion of legal rights by holders of copyrights, patents, and trademarks."); *Medeco Sec. Locks, Inc. v. Fichet–Bauche,* 568 F.Supp. 405, 408 (D.Va.1983) (holding that the mailing of the letter "alone is not a contact significant enough to warrant the exercise of in personam jurisdiction."); *see also Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions, Inc.,* 963 F.Supp. 899, 903 (C.D.Cal.1997) (in lawsuit over proprietary rights in design of table set, court held that nonresident's actions of sending two cease-and-desist letters to resident did not subject nonresident to specific jurisdiction).

■■■ Illustrative of this line of authority is the decision in *KVH Indus., Inc. v. Moore,* 789 F.Supp. 69 (D.R.I.1992), a case similar to the one before the court in which the court found that a letter mailed into the forum state charging patent infringement was not sufficient to confer specific personal jurisdiction. *Id.* at 73. After considering arguments on both sides of the question, the court concluded by saying that:

> [T]he Court does not feel that one letter (or even several letters) asserting allegedly valid patent rights, can give rise to personal jurisdiction, specific or general. This cannot be the sort of meaningful, purposeful forum contacts the Supreme Court had in mind in *Burger King and Asahi Metal*

[*Ind. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ]. If the Court found personal jurisdiction in this case, it would be tantamount to announcing that all patent holders are susceptible to suit in this forum if they assert their rights against a [South Carolina] resident. This is not a desirable policy. It would be unfair and unjust to adopt a rule that to uphold her rights, a patent holder must submit to the jurisdiction of a wrongdoer's forum.

*Id.* at 73. This court concurs in that assessment.[5] It should not be the rule that a patent holder cannot demand recourse from an infringer without submitting to the jurisdiction of the wrongdoer's forum. *See Zumbro, Inc.,* 861 F.Supp. at 781 (holding that the exercise of rights under federal law should not subject one to suit in any forum where other party is allegedly violating those rights); *BIB Mfg.,* 804 F.Supp. at 1133 ("the patent laws countenance the sending of written notice of infringement prior to litigation and thus should not subject a patent-holder to jurisdiction in a foreign forum"). Such a rule would leave the patentee only three options: the patentee could forego his rights entirely; the patentee could attempt to settle the dispute without litigation, but at the price of submitting to the jurisdiction of a distant forum; or the patentee could sue without any warning, the blitzkrieg nature of the attack being necessary to avoid vulnerability to foreign jurisdiction. A contrary ruling would also run against public policy for two reasons. First, it would discourage the settlement of disputes. Second, it would unjustifiably paint the patent holder as the wrongdoer. It would indeed be a strange

---

5. The crux of Med–Tec's argument in support of specific jurisdiction is that, by sending the May 15, 1997, letter threatening litigation into this jurisdiction, defendants purposefully availed themselves of the forum, thereby making specific jurisdiction appropriate in this case. Med–Tec cites two district court opinions from the United States District Court for the Central District of California, *Burbank Aeronautical Corp. II v. Aeronautical Dev. Corp.,* 16 U.S.P.Q.2d 1069, 1990 WL 261395 (C.D.Cal.1990), and *Dolco Packaging Corp. v. Creative Indus., Inc.,* 1 U.S.P.Q.2d 1586, 1986 WL 84366 (C.D.Cal.1986), for the proposition that the mere act of sending letters threatening litigation into the forum jurisdiction is suffi-

cient to establish specific personal jurisdiction. Although these two cases support Med–Tec's position, they are not controlling on this court, and the court declines to follow *Burbank and Dolco.* The court notes that neither the *Burbank* nor the *Dolco* decision even cite to *Cascade Corp.,* 619 F.2d at 38, the controlling precedent in the Ninth Circuit. Furthermore, the court notes that the most recent decision from the United States District Court for the Central District of California, *Douglas Furniture Co. of Cal., Inc.,* 963 F.Supp. at 903, explicitly declined to follow *Burbank and Dolco. Douglas Furniture Co. of Cal., Inc.,* 963 F.Supp. at 903.

twist if the very written notice of infringement necessary to commence the running of damages submits the patentee to the foreign jurisdiction of the infringer. Here, the court concludes that defendants' letter of May 15, 1997, does not constitute anything such that they "should reasonably anticipate being haled into court" in Iowa. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

At the hearing on defendants' motion to dismiss, Med–Tec asserted for the first time that defendants maintained other contacts with Iowa sufficient to satisfy due process.[6] Med–Tec argues that defendants' sending of a prior cease and desist letter to Med–Tec, prior litigation between Med–Tec and Smithers, Smithers' advertising of products in national publications, and its sale of some products in the State of Iowa constitute substantial contacts directly related to this action. In evaluating the nature and quality of these contacts, the court attempts to ascertain whether defendants purposefully availed themselves of the benefits and protections of Iowa law. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183.

The quantity of Smithers and Kostich's respective contacts with Iowa can best be characterized as minuscule. Kostich has no interest in, use, or possession of any real estate, bank accounts, or personal property in the State of Iowa. Indeed, he has never even visited the State of Iowa. Smithers' employees are not physically present in Iowa and it has made extremely limited sales of its products to customers located in Iowa. Smithers has apparently solicited sales of its products by advertising in national publications. In addition, Smithers sent Med–Tec two letters concerning Kostich's patents and Med–Tec's potentially infringing products.[7] The nature and quality of Smithers' contacts illustrated no attempt on its part to develop

its business in the State of Iowa in any meaningful or purposeful way. Smithers does not maintain any physical presence in Iowa, has no employees in Iowa, and owns no property and holds no accounts in Iowa. Although Smithers' sale of products not covered by any of the patents at issue constitutes voluntary economic activity which is protected by Iowa law, its selling products not covered by any of the patents at issue are acts unrelated to the subject matter of Med–Tec's claims. *See Land–O–Nod Co. v. Bassett Furniture Industries,* 708 F.2d 1338, 1341 (8th Cir.1983). Accordingly, the court discerns no nexus between Smithers' limited marketing and sale of products not covered by any of the patents at issue in Iowa and the subject matter of Med–Tec's lawsuit.

Therefore, for the reasons stated above, the court finds that Med–Tec has not made out a *prima facie* case for the exercise of personal jurisdiction over defendants in this case. Med–Tec has failed to demonstrate that either defendant has the requisite minimum contacts with the State of Iowa which would warrant such jurisdiction. Having decided that this court cannot take personal jurisdiction over these defendants, the final issue to determine is whether to transfer the case to the United States District Court for the Northern District of Ohio.

### D. Transfer Of Case

Defendants seek to transfer this case to the Northern District of Ohio. Section 1631, Title 28, provides, in relevant part:

Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if

---

6. At the hearing, Med–Tec asserted that Smithers' contacts with Iowa should be attributed to Kostich and their forum contacts aggregated due to the relationship between Kostich and Smithers. The court rejects Med–Tec's contention. The United States Supreme Court has disapproved of aggregating contacts, holding such actions to be "plainly unconstitutional," where a defendant has no contacts with the forum state. *Rush v. Savchuk,* 444 U.S. 320, 331–32, 100 S.Ct. 571, 578–79, 62 L.Ed.2d 516 (1980). Med–Tec

has advanced no theories here which would warrant aggregating contacts in this matter.

7. The first cease and desist letter was sent by Smithers' counsel on May 6, 1996, and involved Kostich's United States Patent 5,454,993. At the hearing, the parties informed the court that this dispute ultimately led to litigation between Smithers and Med–Tec that took place outside Iowa. The parties did not indicate to the court whether Kostich was a party to that lawsuit.

it had been filed in or noticed for the court to which it was transferred on the date upon which it was actually filed or noticed for the court from which it was transferred.

28 U.S.C. § 1631. Courts have interpreted § 1631 to apply to cases such as the present one where personal jurisdiction is lacking in the transferor court. *F.D.I.C. v. McGlamery*, 74 F.3d 218, 220 (10th Cir.1996); *Ross v. Colorado Outward Bound Sch., Inc.*, 822 F.2d 1524 (10th Cir.1987); *Romann v. Geissenberger Mfg. Corp.*, 865 F.Supp. 255, 263 (E.D.Pa.1994); *United States v. American River Transp., Inc.*, 150 F.R.D. 587, 591–92 (C.D.Ill.1993); *Composite Marine Propellers, Inc. v. VanDerWoude*, 741 F.Supp. 873, 878 (D.Kan.1990). *But see Levy v. Pyramid Co. of Ithaca*, 687 F.Supp. 48, 51 (N.D.N.Y.1988) (holding that § 1631 applies only to a lack of subject matter jurisdiction), *aff'd*, 871 F.2d 9 (2d Cir.1989).

Whether a district court should exercise its authority to transfer a case is a decision that lies within the discretion of the district court. *Gunn v. United States Dep't of Agric.*, 118 F.3d 1233, 1240 (8th Cir.1997); *Mills v. Maine*, 118 F.3d 37, 51 (1st Cir.1997); *Service Employees Int'l Union v. Local 1199*, 70 F.3d 647, 655 (1st Cir.1995); *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir.1990); *Leonardo Da Vinci's Horse v. O'Brien*, 761 F.Supp. 1222, 1229 (E.D.Pa. 1991) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955)). While the district court has "broad discretion to decide whether to transfer an action, it is the burden of the moving party to justify the transfer." *Leonardo Da Vinci's Horse*, 761 F.Supp. at 1229. There are a number of factors, both public and private, that a court needs to examine when deciding whether to transfer a case. They include the following:

(1) Plaintiff's choice of forum; (2) Relative ease of access to sources of proof; (3) Availability of compulsory process for attendance of unwilling witnesses; (4) Cost of obtaining attendance of willing witnesses; (5) Possibility of viewing premises, if applicable; (6) All other practical problems that make trial of a case easy, expeditious, and inexpensive; and (7) "Public interest" factors, including the relative congestion of court dockets, choice of law consideration, and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

*Romann v. Geissenberger Mfg. Corp.*, 865 F.Supp. 255, 264 (E.D.Pa.1994) (quoting *Leonardo Da Vinci's Horse*, 761 F.Supp. at 1229 )(quoting in turn *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). Applying these factors to the case at bar, the court holds that justice favors the transfer of this case to the United States District Court for the Northern District of Ohio.

## IV. CONCLUSION

The court finds that Med–Tec has met its burden of demonstrating that an actual controversy is present. Therefore, defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground that an actual case or controversy as required by 28 U.S.C. § 2201 is lacking in this case, is **denied.** However, the court in considering defendants' alternative request that the complaint be dismissed on the ground of lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), concludes Med–Tec has not established a *prima facie* case that this court may exercise personal jurisdiction over either defendant Kostich or Smithers. Therefore, because the Due Process Clause forbids the exercise of personal jurisdiction over defendants, defendants' Motion To Dismiss is **granted.** However, in the interest of justice, defendants' request to transfer this case is granted and this case is transferred to the United States District Court for the Northern District of Ohio.

**IT IS SO ORDERED.**